ADAMS, DUERK & KAMENSTEIN LLP

M. Anthony Brown (SBN 243848)
tony.brown@adkfirm.com
445 S. Figueroa Street, Suite 2300
Los Angeles, CA 90071
(213) 408-4085

ICE MILLER LLP

Michael A. Wukmer
Indiana Attorney No. 2223-49
One America Square, Suite 2900
Indianapolis, IN 46282-0200
michael.wukmer@icemiller.com
(317) 236-2100

Erica Johnson
District of Columbia Attorney No. 1740612
200 Massachusetts Ave NW, Suite 400
Washington, DC 20001
erica.johnson@icemiller.com
(202) 807-4022

Attorneys for Plaintiff
TELCOIN LLC

UNITES STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELCOIN, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1-20 and CRYPTOCURRENCY WALLETS WITH ADDRESSES:<br><br>0x35d2775e5f95596509951b140d68fc5b9185ff98,<br><br>0x35d2775e5F95596509951B140D68FC5B9185FF98, and<br><br>0xaa2fda50ca3731970d363d750adf676f6783490c,<br><br>Defendants. | Case No.<br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

*VERIFIED COMPLAINT*

# INTRODUCTION

1. Plaintiff Telcoin LLC ("Telcoin"), for its Verified Complaint for Injunctive Relief and Damages ("Complaint") against Defendants John Does 1-20 (the "Doe Defendants"), who are the owners of cryptocurrency wallets at addresses 0x35d2775e5f95596509951b140d68fc5b9185ff98, 0x35d2775e5F95596509951B140D68FC5B9185FF98, and 0xaa2fda50ca3731970d363d750adf676f6783490c (the "Wallet Defendants" or "Wallets"), alleges:

# PARTIES

2. Telcoin is a corporation organized under the laws of the State of Missouri with its principal place of business at 520 Broadway, 2nd Floor, Santa Monica, California 90401.

3. The Doe Defendants are unknown persons or entities or digital asset wallets whose citizenship and whereabouts are unknown. The Doe Defendants are believed to be the owners of or are certain cryptocurrency wallets at the addresses 0x35d2775e5f95596509951b140d68fc5b9185ff98, 0x35d2775e5F95596509951B140D68FC5B9185FF98, and 0xaa2fda50ca3731970d363d750adf676f6783490c.

4. Defendant 0x35d2775e5f95596509951b140d68fc5b9185ff98 is the address of a wallet whose ownership and physical location are unknown.

5. Defendant 0x35d2775e5F95596509951B140D68FC5B9185FF98 is the address of a wallet whose ownership and physical location are unknown.

6. Defendant 0xaa2fda50ca3731970d363d750adf676f6783490c is the address of a wallet whose ownership and physical location are unknown.

# JURISDICTION AND VENUE

7. Jurisdiction for this Complaint is based upon federal questions presented under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and 28 U.S.C. § 1331.

1  The Court has both personal jurisdiction over the Doe Defendants and in rem or quasi in rem jurisdiction over the Wallet Defendants.

8. The Court has Supplemental Jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367 as they arise from the same nucleus of operative facts as the federal causes of action.

9. The Court has personal jurisdiction over the Doe Defendants because they committed intentional acts causing harm to Plaintiff and others in the State of California.

10. Venue in this Court is appropriate under 28 U.S.C. § 1391 and 28 U.S.C. § 94(a)(2) as a substantial part of the events giving rise to Telcoin's claims occurred in this judicial district.

## BACKGROUND FACTS

### I. Telcoin's Place in the Cryptocurrency Market

11. Cryptocurrency is a digital or virtual currency under various branded names that is secured by cryptography. Many cryptocurrencies are decentralized networks based on blockchain technology, which is a distributed ledger enforced by a disparate network of public and private computers and housed in various data storage facilities in the United States and other locations.

12. Cryptocurrency is traded or exchanged for other digital assets or fiat currencies virtually by using tokens which represent a value determined by their utility and the supply and demand in the marketplace, often in digital exchange platforms. When tokens are exchanged, a permanent numerical name or identity is created and recorded on the blockchain that allows the flow of funds to be traced to wallets identifiable by their public key in their cryptographic key pair. Wallet ownership means to possess the private key in a wallet's cryptographic key pair, which is required in order to control the tokens assigned to a wallet.

13. Telcoin offers digital remittances to mobile money platforms and e-wallets globally, in addition to a self-custodial DeFi wallet on the Polygon

blockchain. Users can store, send, and trade many digital assets through the use of Telcoin's computer systems, network, and data storage (collectively, "Computer Systems").

14. Telcoin also has its own valuable native token that provides functionality to the platform and can be bought, sold, or exchanged on its platform and on other exchange platforms. Telcoin's native token is an Ethereum-based token developed to facilitate instant international transactions to all mobile users. This peer-to-peer payment system leverages blockchain technology and mobile money infrastructure to enable users to send money instantly anywhere in the world. Telcoin collaborates with telecom providers worldwide to help them offer quick and affordable remittance services and other financial applications.

15. Because Telcoin engages in and affects interstate and international commerce and communication, Telcoin's Computers Systems are "protected computers" within the meaning of the Computer Fraud and Abuse Act. 18 U.S.C. § 1030(e)(2)(b), *et seq*.

16. Telcoin's Computer Systems are computer services within the meaning as defined and used in the Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502: Unauthorized Access to Computers, Computer Systems, and Computer Data.

## II. The Hack

17. Despite deploying advanced security measures to safeguard its Computer Systems, assets, and customer information, Telcoin experienced a security breach on December 25, 2023. During this incident, unknown hackers exploited a vulnerability within a proxy smart contract on the Polygon blockchain which allowed them to illicitly withdraw $10,525,023.49 from digital wallets on the Telcoin platform. The hackers reinitialized the wallet contracts, which redirected the Telcoin customer funds to external wallets under the hackers' control.

18. The exploitation was a sophisticated leveraging of the complex architecture of smart contracts. Specifically, the hackers did not access the wallets directly but exploited a hole in the smart contract programming on the blockchain, which allowed the hackers to overwrite the program to initialize wallets and give the hackers the ability to drain customer funds to their own wallets.

19. The hackers' actions were all carried out without Telcoin's knowledge or authorization, constituting a clear violation of access protocols and effecting a fraud on Telcoin and its customers and a theft of assets from Telcoin's customers for the hackers' personal financial gain.

### III. The Discovery and Investigation

20. Within one hour of the hack, Telcoin detected the security breach and restricted access to Telcoin's infrastructure, essentially by shutting down its network. Telcoin also identified the root cause of the breach and alerted the users and the general public. Telcoin promptly began an investigation into the stolen funds.

21. Because the transfer of the tokens was on the blockchain, the hack left a digital footprint. This footprint makes it possible in some, but not all, instances to track the flow of the digital assets. However, the footprint does not evidence the identity of the hackers nor the individual(s) currently controlling the assets. While individual tokens are not traceable, transactions of the digital funds in and out of the wallets are and can be permanently found on the public blockchain.

22. Telcoin's investigation revealed that there were at least two hackers. There may have been three or more hackers.

23. The investigation revealed that the hackers redirected or stole 33 different types of tokens, whose value on December 25, 2023—the day of the hack—was $10,525,023.49 USD.

24. The digital footprint on the blockchain revealed that the tokens were exchanged or traded for value on the open market, which is a way of "laundering" the digital assets so that the transaction can be traced, but the identity of the hackers

remains unknown. Telcoin cannot discern if the purchasers of any tokens were related to or known by the hackers. Because the tokens' value plummeted after the news of the hack was publicized, the hackers—and ultimately Telcoin's customers—lost value in their digital assets of nearly $5,000,000 in the exchange that will not be recoverable.

25. The hackers transferred other tokens to eight digital wallets which are owned and controlled by the hackers located on at least two cryptocurrency platforms.

26. Shortly after the hack, the hackers also transferred approximately $2.4 million to wallets, which are wallets that exist outside of the public blockchain. Telcoin has been able to identify the addresses of some of the relevant wallets:

0x35d2775e5f95596509951b140d68fc5b9185ff98,

0x35d2775e5F95596509951B140D68FC5B9185FF98, and

0xaa2fda50ca3731970d363d750adf676f6783490c

(the "Wallet Defendants" or "Wallets").

27. The ownership of these Wallets is unknown. The funds in these Wallets have remained untouched since the funds were illegally transferred to them.

## IV. Current Status

28. The digital footprint confirms that all of the funds in the Wallets were taken from the Telcoin platform and none of the funds were from other sources.

29. As of December 19, 2025, the value of the funds in these wallets is approximately $1,572,280 USD.

30. Although the funds have remained in the Wallets to date, they can be instantly transferred by the hackers to other accounts if the hackers know that the funds are about to be seized. If the funds are transferred to other wallets or traded on the open market, the ability of Telcoin to learn the identities of the perpetrators or to recover funds will likely be lost forever. Similarly, funds from the Wallets can be

transferred or traded for fiat currency without repercussions if no action is taken to seize the wallet assets.

31. Funds in Doe Defendants' Wallets can be frozen, seized and held, or blocked from further transfer by the exchange platforms to prevent the permanent loss of the funds until the Court has the opportunity to adjudicate this action. Telcoin contacted the cryptocurrency exchange platforms where the Wallets holding stolen funds are located and requested that the platforms cooperate to freeze, or seize and hold, or block from further transfer the funds in the Doe Defendants' Wallets until such time that this Court can determine the identities of the Doe Defendants and adjudicate the right of Telcoin to recover the stolen funds. The platforms have signaled their willingness to cooperate after a court order is received.

32. Telcoin is seeking injunctive relief in the form of a Preliminary Injunction to prohibit the Doe Defendants from transferring any of the digital tokens or fiat currency that may be in the Wallet Defendants or otherwise in their possession other than to arrange the safe return of all the assets to Plaintiff until such time that this Court can determine the identities of the parties and adjudicate the right of Plaintiff or Plaintiff's customers to recover the stolen funds.

33. If the known funds in the Wallet Defendants are not frozen, seized and held, or blocked from further transfer, the funds are in imminent danger of being lost forever and Plaintiff will be irreparably harmed.

34. The hackers have no right to retain the funds being held in the Wallet Defendants that Plaintiff seeks to have frozen, seized and held, or blocked from further transfer, and therefore will not be harmed by the granting of injunctive relief in the form of a temporary restraining order and preliminary injunction until the Court can hear evidence and decide the legal issues.

35. The public interest will be served and not harmed by ordering that the assets in the Wallets are frozen, seized and held, or blocked from further transfer by

the Doe Defendants until such time that this Court can determine the identities of the parties and adjudicate the right of Plaintiff to recover the stolen funds.

## V. Mitigation and Damages

36. To regain the public's trust in Telcoin and to mitigate the damages that have occurred to Telcoin and its customers, Telcoin restored the accounts of its customers in the amount of $6,694,594.28, plus additional tokens worth approximately $123,038, rather than requiring the customers to wait until the funds, if any, are recovered from the hackers.

37. Telcoin is equitably subrogated to the rights of its customers to the extent of the $6,817,632 restored to those accounts.

38. As a result of the unauthorized access to Telcoin's Computer Systems, the theft of funds by the hackers, the subsequent devaluation of Telcoin's tokens, and the adverse publicity, Telcoin's reputation and business were substantially injured in an amount yet to be determined.

39. The Doe Defendants' actions have caused significant financial harm to Plaintiff and to Plaintiff's customers by depriving them of over $12,000,000 in value in digital tokens, harm to reputation and goodwill of Plaintiff, expenses incurred in conducting an investigation and damage assessment, lost revenue, costs, attorney's fees and other consequential damages.

40. To the extent calculable, Telcoin is entitled to recover damages from the hackers in an amount to be determined.

41. After the hack, Plaintiff was contacted by a group of so-called "white hats" who allegedly hacked Plaintiff's network and was withholding a small amount of tokens which the "white hats" offered to return. To mitigate its losses, Plaintiff negotiated the return of $37,311.11 from the white hats but forfeited $ $4,839.31 in value in exchange for the return. Plaintiff seeks the amount forfeited as part of its damages against the Doe Defendants.

42. All conditions precedent to the prosecution of these actions have been performed, have occurred, or have been excused or waived.

## COUNT I:
## COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

43. Plaintiff realleges and incorporates by reference paragraphs 1-42 as if fully set forth in this paragraph.

44. The Computer Fraud and Abuse Act, found in 18 U.S.C. § 1030, was enacted primarily to address computer hacking and to identify, prohibit, and punish the actions of the type alleged against the Doe Defendants.

45. The Computer Fraud and Abuse Act expressly has worldwide application and allows worldwide claims for injunctive relief and damages.

46. The acts of the Doe Defendants fall within the prohibitions of the Computer Fraud and Abuse Act.

47. As a result of the Doe Defendants' actions, Plaintiff is entitled to immediate injunctive relief under the Computer Fraud and Abuse Act.

48. To the extent calculable, Plaintiff is also entitled to recover all damages proximately caused by the Doe Defendants under the Computer Fraud and Abuse Act pursuant to 18 U.S.C. § 1030(d).

## COUNT II:
## COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE § 502: UNAUTHORIZED ACCESS TO COMPUTERS, COMUPTER SYSTEMS AND COMPUTER DATA

49. Plaintiff realleges and incorporates by reference paragraphs 1-48 as if fully set forth in this paragraph.

50. The Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502: Unauthorized Access to Computers, Computer Systems, and Computer Data, is the California state analogue to the federal Computer Fraud and Abuse Act found in 18 U.S.C. § 1030.

51. The Comprehensive Computer Data Access and Fraud Act makes it illegal, among other things, to knowingly access a computer, computer system, or computer network: (a) with the intent to defraud, deceive or wrongfully control or obtain money, property, or data; or (b) to use the computer services without permission, or (c) to cause disruption to the computer software, systems, or network, etc.

52. The Comprehensive Computer Data Access and Fraud Act specifically allows a civil action to recover damages, including attorney's fees, and to obtain injunctive relief. Cal. Penal Code § 502(e)(1).

53. The acts of the Doe Defendants as described above fall within the prohibitions of the Comprehensive Computer Data Access and Fraud Act.

54. Plaintiff is entitled to immediate injunctive relief under California's Comprehensive Computer Data Access and Fraud Act.

55. To the extent calculable, Plaintiff is also entitled to recover all damages proximately caused by the Doe Defendants under California's Comprehensive Computer Data Access and Fraud Act.

## COUNT III:
## THEFT AND RECEIVING STOLEN PROPERTY

56. Plaintiff realleges and incorporates by reference paragraphs 1-55 as if fully set forth in this paragraph.

57. California Penal Code § 496(a) provides that "[e]very person who buys or receives any property that has been stolen or that has been obtained has engaged in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished."

58. The Doe Defendants' actions in hacking and removing funds from Plaintiff's platform and Plaintiff's customers' accounts constituted theft as defined by California Penal Code § 496.

59. The Doe Defendants' actions in continuing to hold the stolen funds in their Wallets over which they have access and control constitutes the concealing, selling, withholding, or aiding in concealing, selling, or withholding of the stolen funds.

60. California Penal Code § 496(c) provides that "[a]ny person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

61. Plaintiff is entitled to a judgment in the amount of three times its actual damages proximately caused by the Doe Defendants' theft and the receipt and withholding of stolen funds.

## COUNT IV:
## DIGITAL TRESPASS

62. Plaintiff realleges and incorporates by reference paragraphs 1-61 as if fully set forth in this paragraph.

63. The acts of the Doe Defendants as described above constitute trespass under California law, which applies to digital assets.

64. The Doe Defendants intentionally and without authorization interfered with Plaintiff's possessory interest in its computer system and their unauthorized use caused damages to Plaintiff and Plaintiff's customers.

65. Plaintiff is entitled to recover from the Doe Defendants all damages proximately caused by the Doe Defendants' trespass.

## COUNT V:
## CONVERSION

66. Plaintiff realleges and incorporates by reference paragraphs 1-65 as if fully set forth in this paragraph.

67. The acts of the Doe Defendants as described above constitute conversion under California law.

68. The Doe Defendants unlawfully and without permission or authority took possession of Plaintiff's property or the property of Plaintiff's customers for their own use and benefit.

69. The Doe Defendants' conversion of funds caused damages to Plaintiff and Plaintiff's customers.

70. Plaintiff is entitled to its damages proximately caused by the Doe Defendants as a result of its conversion of Plaintiff's or Plaintiff's customers' property.

## COUNT VI:
## REPLEVIN

71. Plaintiff realleges and incorporates by reference paragraphs 1-70 as if fully set forth in this paragraph.

72. The digital tokens stolen and converted by the Doe Defendants were personal property of Plaintiff or Plaintiff's customers and some of those tokens are currently being held in the Doe Defendants' Wallets controlled by the Doe Defendants.

73. The Doe Defendants have and are intentionally exercising control over the digital assets in such a way as to exclude Plaintiff or Plaintiff customers from using or possessing them.

74. Defendants have no right to possess the digital assets.

75. The property has not been taken for any tax assessment or fine, nor is it the subject of an execution or attachment against Plaintiff's property.

*VERIFIED COMPLAINT*

76. Plaintiff demands the digital assets taken from Plaintiff or Plaintiff's customers and currently being held in the Doe Defendants' Wallets by the Doe Defendants be restored to Plaintiff and Plaintiff's customers.

## COUNT VII:

## CONSTRUCTIVE TRUST

77. Plaintiff realleges and incorporates by reference paragraphs 1-76 as if fully set forth in this paragraph.

78. The digital tokens stolen and converted by the Doe Defendants were the personal property of Plaintiff or Plaintiff's customers and some of those tokens are currently being held in the Wallets controlled by the Doe Defendants.

79. The Doe Defendants acquired the digital tokens and fiat currencies in the Wallets illegally and have no right to maintain possession of these digital tokens and fiat currencies.

80. Plaintiff requests that the Court order the seizure and establishment of a constructive trust consisting of all recovered digital tokens and funds in the Wallets, plus any income derived therefrom, to continue to be held in trust until it can be returned to the rightful owner of the digital tokens and fiat currency; or, if the funds and digital tokens are insufficient to restore all of the property to Plaintiff and Plaintiff's customers, that the digital tokens and funds be held in trust until it is determined how the digital assets and funds should be equitably divided up among the rightful owners.

## COUNT VIII:

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

81. Plaintiff realleges and incorporates by reference paragraphs 1-80 as if fully set forth in this paragraph.

82. Plaintiff had contracts with its customers as of December 25, 2023, pursuant to which the customers maintained digital assets on Plaintiff's Computer Systems.

83. The Doe Defendants were aware of these contractual relationships of Plaintiff with its customers.

84. The Doe Defendants unlawfully accessed Plaintiff's Computer Systems for the purpose of interfering with the contracts by diverting digital assets from the possession of Plaintiff and Plaintiff's customers to the wallets of the Doe Defendants.

85. The interference by the Doe Defendants has resulted in significant losses to Plaintiff and Plaintiff's customers for which the Doe Defendants are liable.

86. Plaintiff is entitled to recover all damages proximately caused by the Doe Defendants' interference with Plaintiff's customers.

87. The actions of the Doe Defendants were malicious and illegal and were done without any lawful justification and for the purpose of causing harm to Plaintiff. As a result, Plaintiff is also entitled to recover punitive damages against the Doe Defendants for their tortious interference.

## COUNT IX:
## CONSPIRACY AND CONCERT OF ACTION

88. Plaintiff realleges and incorporates by reference paragraphs 1-87 as if fully set forth in this paragraph.

89. The conduct of the Doe Defendants acting together with each other and with third parties, constitutes an illegal conspiracy and concert of action to hack into Plaintiff's computers and computer system, to exercise unauthorized control over assets of Plaintiff and Plaintiff's customers for their own gain, and to cause harm to Plaintiff and Plaintiff's customers.

90. Plaintiff is entitled to recover from the Doe Defendants all damages directly and proximately caused by the conspiracy and concert of action, plus prejudgment interest, attorneys' fees and all costs and expenses of this litigation.

//

//

# VERIFICATION

The undersigned affirms under penalties of perjury that the facts set forth in this verified Complaint are true based upon personal knowledge or based upon records and information still in existence at Telcoin that confirm the accuracy of the information.

_____
Paul Neuner

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Telcoin demands:

1. That the Court grant injunctive relief in the form of a Preliminary Injunction under the Computer Fraud and Abuse Act, found in 18 U.S.C. § 1030, and the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502, to prohibit the Doe Defendants from transferring any of the digital tokens or fiat currency that may be in the Wallets or otherwise in their possession other than to arrange the safe return of all the assets to Plaintiff until such time that this Court can determine the identities of the parties and adjudicate the right of Plaintiff or Plaintiff's customers to recover the stolen funds;

2. That the Court establish a constructive trust of the digital tokens and funds in the Wallets, plus any income derived therefrom, to continue to be held in trust until it can be returned to the rightful owner of the digital tokens and fiat currency; or, if the funds and digital tokens are insufficient to restore all of the property to Plaintiff and Plaintiff's customers, that the digital tokens and funds be

1  held in trust until it is determined how the digital assets and funds should be equitably
2  divided up among the rightful owners;

3      3.    That the Court order all the digital assets taken from Plaintiff or
4  Plaintiff's customers and currently being held in the Wallets to be restored to Plaintiff
5  and to Plaintiff's customers;

6      4.    That the Court enter Judgment in favor of Plaintiff and against the Doe
7  Defendants for any and all damages suffered by Plaintiff as a proximate result of the
8  Doe Defendants' actions under the Computer Fraud and Abuse Act, 18 U.S.C. §
9  1030, the California Comprehensive Computer Data Access and Fraud Act,
10 California Penal Code § 502, and under the theories of Conversion, Digital Trespass,
11 Interference with Contracts and Conspiracy and Concert of Action;

12     5.    That the Court enter Judgment in favor of Plaintiff and against the Doe
13 Defendants for three times the amount of damages suffered by Plaintiff as a result of
14 Doe Defendants' actions that constitute theft under California Penal Code § 496;

15     6.    That the Judgments against the Doe Defendants include awards for
16 punitive damages, prejudgment interest for all funds taken since December 25, 2023,
17 plus all reasonable attorneys' fees;

18     7.    That the Court order such other relief as this Court deems equitable and
19 just.

Dated: December 22, 2025                          Respectfully submitted,

ADAMS, DUERK & KAMENSTEIN LLP                     ICE MILLER LLP

By: _s/ M. Anthony Brown_                         By: _s/ Michael A. Wukmer_

M. Anthony Brown                                  Michael A. Wukmer
                                                  Erica Johnson
Attorney for Plaintiff
TELCOIN LLC                                       Attorneys for Plaintiff
                                                  TELCOIN LLC